Gary LINGLER, Appellant–Petitioner,

v.

STATE of Indiana, Appellee–Respondent.

No. 55A01–9311–PC–358.

Court of Appeals of Indiana,
First District.

June 13, 1994.

Susan K. Carpenter, Public Defender, Anne–Marie Alward, Deputy Public Defender, Indianapolis, for appellant.

Pamela Carter, Atty. Gen., Dana A. Childress–Jones, Deputy Atty. Gen., Indianapolis, for appellee.

NAJAM, Judge.

## STATEMENT OF THE CASE

Gary Lingler appeals from the denial of his petition for post-conviction relief following his seven felony convictions, his adjudication as an habitual offender and his sentence of 200 years imprisonment. Our supreme court affirmed Lingler's convictions on direct appeal. *See Johnson v. State* (1985), Ind., 472 N.E.2d 892. Lingler raises four issues as grounds for post-conviction relief which we restate as:

1. Whether the jury instruction for attempted murder was erroneous.

2. Whether Lingler's sentences violated the prohibition against double jeopardy.

3. Whether Lingler met his burden of proof as a post-conviction petitioner of demonstrating that the evidence was insufficient to prove his habitual offender status.

4. Whether Lingler was deprived of the effective assistance of counsel.

We affirm in part, reverse in part, and remand.

## FACTS

We adopt the facts as stated by our supreme court in its opinion on Lingler's direct appeal:

"[O]n the evening of December 26, 1981, D.T. returned to her Greenwood, Indiana apartment after having been out with friends. As she got out of her car, a man approached her, grabbed her, and threatened her with a knife. D.T. was forced by the man with a knife into a vehicle in which two other men were seated. One of the other men threatened her with a gun. She eventually was driven to a house not far from I–65 in Indianapolis. She was forced into a bedroom where each man forced her to engage in sexual activities against her will. All three men engaged in regular sexual intercourse and two of the men also performed anal intercourse upon her. The men then promised that they would not hurt her and forced her back into the car. They did not, however, drive her back to her apartment, but instead drove to the Henderson–Ford Bridge in Morgan County, where they bound her hands and threw her off the bridge into icy waters.

D.T. was able to free herself after hitting the water and eventually was able to struggle to shore. Before she pulled herself from the icy river, she waited until a car parked on the bridge left, afraid that it contained her assailants. She then dragged herself to the road and was able to flag down a passing car. She was taken to the sheriff's office and from there to a hospital for medical treatment. From a composite sketch she gave to the police, Officer Deal was able to identify Michael Johnson. On January 17, 1982, D.T. attended a lineup and identified Michael Johnson as one of the perpetrators. At trial she unequivocally identified Michael Johnson. From photographic displays D.T. further identified Gary Lingler and positively identified him at the trial. From a second lineup she selected Ronald Johnson as looking like the driver of the car, but she was not positive of his identification. D.T. was able to identify Michael Johnson's house as appearing to be the house where she was raped, and made some identification of Ronald Johnson's automobile."

*Johnson v. State* (1985), Ind., 472 N.E.2d 892, 898.

## DISCUSSION AND DECISION

### Issue One: Attempted Murder Instruction

■ Lingler first argues that the trial court erred when it instructed the jury on the elements of attempted murder. Lingler claims that the instruction is insufficient under the rationale of our supreme court's decision in *Spradlin v. State* (1991), Ind., 569 N.E.2d 948, because the instruction does not state that Lingler must have intended to commit murder while taking a substantial step toward the commission of murder.

Here, the jury was instructed as follows:
"I.C. 35–41–5–1. ATTEMPTED Murder ... [a] person attempts to commit murder when, acting with the culpability required for commission of murder, he engages in conduct that constitutes a substantial step toward commission of the crime of murder. The elements of ATTEMPTED Murder are that the accused must:
(1) knowingly or intentionally
(2) attempt to kill
(3) another human being"

Trial Record at 388. In *Jackson v. State* (1991), Ind., 575 N.E.2d 617, the supreme court interpreted its decision in *Spradlin* and held that an attempted murder instruction which used the phrase "attempting to kill" rather than "intending to kill" was a valid attempted murder instruction. *See Jackson,* 575 N.E.2d at 621. By instructing the jury that it must find the defendant attempted to kill the victim, it is logically necessary for the jury to find that the defendant intended to kill the victim. *Id.*

The *Jackson* decision applies here and controls. The jury was instructed that a required element of attempted murder is an

"attempt to kill" another human being. Thus, the jury was properly instructed that Lingler's specific intent to commit murder was a necessary element of attempted murder. The attempted murder instruction further informed the jury that attempted murder includes engaging in conduct which constitutes a substantial step toward commission of the crime of murder. Accordingly, we conclude that the jury instruction contained all of the elements of the offense of attempted murder. We find no error.[1]

### Issue Two: Double Jeopardy

■ Lingler also maintains that his convictions and sentences for two counts of Rape with a deadly weapon, Criminal Deviate Conduct while armed with a deadly weapon and Criminal Confinement while armed with a deadly weapon violate the prohibition against double jeopardy. Lingler asserts his convictions and sentences for these offenses were all elevated to more serious felonies by the same element: the fact that he was armed with a deadly weapon. According to Lingler, he was four times placed in jeopardy for the same conduct when each felony offense was elevated by the same statutory aggravator. We cannot agree.

■ The prohibition against double jeopardy is violated when the defendant is convicted and sentenced for two separate crimes which are based upon the same act or the same conduct. *See Derado v. State* (1993), Ind., 622 N.E.2d 181, 183; *Shipley v. State* (1993), Ind.App., 620 N.E.2d 710, 717. However, double jeopardy is not violated by elevating the level of multiple felony charges on the basis that the defendant was armed with a deadly weapon while committing separate and distinct crimes. *See Brown v. State* (1994), Ind.App., 633 N.E.2d 322, 324; *Barker v. State* (1993), Ind.App., 622 N.E.2d 1336, 1338, *trans. denied; Smith v. State* (1993), Ind.App., 611 N.E.2d 144, 148, *trans. denied; White v. State* (1989), Ind.App., 544 N.E.2d 569, 570–71, *trans. denied.* Here, the evidence adduced at trial showed that Lingler confined the victim in a car, performed deviate sexual acts upon her at a residence and then raped her twice, all while armed with a deadly weapon. Each use of a deadly weapon occurred during Lingler's commission of four separate and distinct crimes. *See Smith,* 611 N.E.2d at 148. Thus, we conclude that Lingler was not placed in double jeopardy.[2]

### Issue Three: Sufficiency of Habitual Offender Evidence

Lingler next challenges at the post-conviction stage the sufficiency of the evidence offered by the State to prove his status as an habitual offender. Specifically, Lingler contends that while the State proved the dates of his two prior convictions, the State failed to prove the date on which he committed each offense. According to Lingler, his habitual offender adjudication cannot stand because the date on which he committed the second offense is an essential element of the State's burden of proof and its omission is fundamental error.

■ Lingler is correct when he asserts the State must prove that (1) the commission, conviction and sentencing on his first offense preceded the commission of the second offense and that (2) the commission of the principal offense followed the commission, conviction and sentencing on his second offense. *See Weatherford v. State* (1993), Ind., 619 N.E.2d 915, 917. However, when a post-conviction petitioner alleges that the State failed to produce sufficient evidence of the sequence of the prior felony convictions, the petitioner must demonstrate that his convictions did not in fact occur in the required order. *Id.* at 918. In other words, the post-conviction petitioner, not the State, bears the burden of proof on that issue at the post-

---

1. The parties disagree whether the rule from *Spradlin* applies retroactively to Lingler's trial. However, we need not decide this question because even if it did, Lingler's attempted murder instruction complies with *Spradlin.*

2. Lingler cites this court's decision in *Lyles v. State* (1991), Ind.App., 576 N.E.2d 1344, *trans. denied,* which held that the defendant's enhanced convictions for the felonies of intimidation and battery violated the prohibition against double jeopardy where each felony was enhanced by his use of a deadly weapon. *Id.* at 1352. However, we think the better rule was articulated in *Brown, Barker, Smith* and *White* and, thus, decline to follow *Lyles.*

conviction stage. *See id.* at 917–18. The post-conviction petitioner meets his burden only if the evidence "plainly" and "clearly" shows that the two, prior convictions did not occur in the proper sequence. *Id.* at 917 (citing *Williams v. State* (1988), Ind., 525 N.E.2d 1238).

In *Williams,* the habitual offender information indicated only the date of each prior conviction, and the State did not prove the date on which either offense was committed. *Williams,* 525 N.E.2d at 1241. However, the State's evidence revealed that the information for the second conviction was filed one month before the date of the first conviction, thereby providing conclusive evidence that the convictions did not occur within the required sequence. *See id.* Because the petitioner for post-conviction relief met his burden of proof, our supreme court vacated the habitual offender determination.

■ In the instant case, Lingler failed to demonstrate that his prior felony convictions in fact did not occur in the proper sequence and did not support his adjudication as an habitual offender. A mere showing that the State failed to prove the date on which each offense was committed is insufficient to meet the post-conviction petitioner's burden of proof. *See Weatherford,* 619 N.E.2d at 917– 18. As a post-conviction petitioner, Lingler has not met his burden of proof and shown fundamental error on his claim that the habitual offender evidence was insufficient.

### Issue Four: Ineffective Assistance of Counsel

Finally, Lingler asserts that he was deprived of the effective assistance of counsel by his counsel's representation both at trial and on appeal. Lingler argues his counsel was ineffective by failing to object to the sufficiency of the State's evidence during the habitual offender phase of his trial and by failing to raise this issue on direct appeal. In Issue Three, we concluded that Lingler failed to carry his burden of proof under *Weatherford v. State* (1993), Ind., 619 N.E.2d 915, when, as a post-conviction petitioner, he raised the insufficiency of the habitual offender evidence as fundamental error. However, Lingler's argument that his counsel was

ineffective for failing to raise that issue on direct appeal implicates Lingler's Sixth Amendment right to counsel and, thus, requires closer scrutiny.

■ We first observe that where the post-conviction petitioner is represented by the same counsel at both trial and on direct appeal, the petitioner may assert ineffective assistance of counsel for the first time in post-conviction proceedings. *See McBride v. State* (1992), Ind.App., 595 N.E.2d 260, 262, *trans. denied.* Therefore, at the post-conviction stage, Lingler has not waived a claim of ineffective assistance of counsel.

A defendant establishes ineffective assistance of counsel when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington* (1984), 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674, 698. As the post-conviction petitioner, Lingler bears the burden of establishing his grounds for relief by a preponderance of the evidence. *See* Ind. Post–Conviction Rule 1, § 5.

■ We concluded that Lingler failed to carry his burden and show error in Issue Three because the post-conviction petitioner bears the burden of demonstrating that his prior felony convictions in the habitual offender adjudication did not in fact occur in the required order. *See Weatherford v. State* (1993), Ind., 619 N.E.2d 915, 918. In a direct appeal, however, a challenge to the adequacy of the evidence supporting the habitual offender adjudication puts "the State to its proof." *Id.* In other words, on direct appeal, the State must show that the evidence was sufficient to establish the proper sequence of the prior convictions to sustain an adjudication of habitual offender status. *See id.*

■ Here, Lingler's counsel did not raise at trial or on direct appeal the State's failure to prove the dates on which he committed his prior felonies. During the habitual offender phase of Lingler's trial, the State produced evidence showing the date on which the information was filed for Lingler's second felony conviction. Thus, while the State con-

cedes that it "never established the exact date" Lingler committed his second felony, the State claims the "jury could have certainly inferred" that Lingler committed the second felony after the date of his first felony conviction. *See* Brief of Appellee at 17.

■ Our supreme court has consistently held that where the State has established the dates of the prior felony convictions but has failed to establish the date on which each felony was committed, the evidence is insufficient to sustain the habitual offender adjudication. *See, e.g., Powers v. State* (1989), Ind., 540 N.E.2d 1225, 1227; *McCovens v. State* (1989), Ind., 539 N.E.2d 26, 31; *Jaske v. State* (1989), Ind., 539 N.E.2d 14, 24. It is not enough that commission of the second felony offense might have occurred subsequent to sentencing on the first felony offense. Rather, the evidence must eliminate the possibility that the second predicate offense was committed prior to the sentencing date of the first predicate offense to support an habitual offender determination. *Jaske,* 539 N.E.2d at 24; *see McCovens,* 539 N.E.2d at 31 (span of nearly twenty years between felony convictions insufficient to support inference that felonies were committed in required sequence). The State's evidence in this case does not eliminate such a possibility. The date on which the information was filed only established the date on which charges were formally filed against Lingler for the second felony, not the date he committed the offense. We conclude, as a matter of law, that this evidence is insufficient to establish the proper sequence for Lingler's prior felony convictions.

Thus, Lingler can in fact demonstrate ineffective assistance of counsel because, if his counsel had raised the insufficiency of the State's sequencing evidence on direct appeal, reversal of Lingler's habitual offender adjudication would have been required. *See Weatherford,* 619 N.E.2d at 918 (post-conviction petitioner must demonstrate "in fact" the right to relief); *cf. Powers v. State* (1993), Ind., 617 N.E.2d 545, 547 (no ineffective assistance of appellate counsel shown where had counsel raised insufficiency of sequencing evidence on direct appeal, evidence was sufficient and result would not have been

different). Lingler's argument meets both criteria for an ineffective assistance of counsel claim: (1) deficient performance and (2) prejudice. *See Lockhart v. Fretwell* (1993), — U.S. —, —, 113 S.Ct. 838, 842, 122 L.Ed.2d 180, 189 (citing *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674).

■ This is not a case where counsel's performance may be justified by isolated poor performance, strategy or tactics. In determining whether counsel's performance was deficient, our courts may not second guess questions of strategy and tactics unless counsel's choices appear to have been so poor that no reasonable lawyer would have been tempted to follow such a strategy. *McBride,* 595 N.E.2d at 262–63. Judged by this standard, the failure by Lingler's counsel to challenge the sufficiency of the sequencing evidence is per se deficient unless, incredibly, his counsel's strategy was to remain silent and ensure Lingler's adjudication as an habitual offender.

Neither is this a case where the defendant was not prejudiced by his counsel's deficient performance. The focus of the prejudice component of *Strickland* is whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair. *Lockhart,* — U.S. at —, 113 S.Ct. at 844, 180 L.Ed.2d at 191. Unreliability or unfairness results if the ineffectiveness of counsel deprives the defendant of any substantive or procedural right to which the law entitles him. *Id.*

■ Here, Lingler was deprived of a substantive constitutional right by his counsel's deficient representation. The Due Process Clause guarantees for the accused the right to proof of his guilt beyond a reasonable doubt. *See In re Winship* (1970), 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368, 375; *Meredith v. State* (1982), Ind.App., 439 N.E.2d 204, 207 ("reasonable doubt standard is constitutionally mandated") (citing *In re Winship*). There is no principle more firmly established in the law than the rule that the State bears the burden of proving the defendant's guilt by that standard in a criminal prosecution. *See id.* at 362, 90 S.Ct. at 1071,

■

25 L.Ed.2d at 374; *see also* IND.CODE § 35–41–4–1(a) ("A person may be convicted of an offense only if his guilt is proved beyond a reasonable doubt").

The practical effect in this case of counsel's failure to challenge on direct appeal the sufficiency of the habitual offender evidence is that the burden of proof shifted from the State to Lingler at the post-conviction stage. On appeal from the denial of post-conviction relief, Lingler labors under a heavier burden than he would have had his counsel raised this issue on direct appeal. *See Weatherford*, 619 N.E.2d at 917–18; *Mosley v. State* (1985), Ind., 477 N.E.2d 867, 868 (post-conviction petitioner "stands in the shoes of one appealing a negative judgment"). In itself, this shift in the burden of proof from the State to the defendant which occurs between a direct appeal and post-conviction relief proceedings is not unconstitutional. *See Weatherford*, 619 N.E.2d at 917 (recognizing differing burdens of proof on direct appeal and in post-conviction relief proceedings as upheld against due process challenge). However, Lingler's counsel's failure to raise the sufficiency of the sequencing evidence on direct appeal deprived Lingler of an outright reversal of his habitual offender adjudication. In other words, had his counsel raised this issue on direct appeal, Lingler would have prevailed for the reason that the State failed to prove his habitual offender status beyond a reasonable doubt. Thus, counsel's omission constituted ineffective assistance of appellate counsel. *See Corsa v. Anderson* (1977), E.D.Mich., 443 F.Supp. 176, 178 (in habeas corpus proceeding, ineffective assistance of counsel found where counsel failed to object to erroneous instruction which shifted burden of proof from State to defendant).

Lingler was denied his due process right to have the State put "to its proof" when on direct appeal his counsel failed to raise the insufficiency of the State's sequencing evidence in the habitual offender phase of his trial. *See Weatherford*, 619 N.E.2d at 917. Counsel's performance relieved the State of its burden of proving Lingler's habitual of-

fender status beyond a reasonable doubt. The result of Lingler's trial was rendered unreliable and unfair and, thus, Lingler was prejudiced by his appellate counsel's deficient representation. We conclude that Lingler was denied the effective assistance of appellate counsel.[3]

### Double Jeopardy on Retrial of Habitual Offender Status

■ As we concluded above, had Lingler's counsel raised on direct appeal the insufficiency of the evidence offered to prove his habitual offender status, Lingler would have secured a reversal of his habitual offender adjudication. If reversal in an habitual offender proceeding is a result of insufficient evidence, double jeopardy considerations bar retrial of the defendant's habitual offender status. *Smith v. State* (1989), Ind., 547 N.E.2d 817, 823; *Perkins v. State* (1989), Ind., 542 N.E.2d 549, 551. "The Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding." *Tibbs v. Florida* (1982), 457 U.S. 31, 41, 102 S.Ct. 2211, 2218, 72 L.Ed.2d 652, 661 (quoting *Burks v. United States* (1978), 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1). The State in this case had and missed its opportunity to prove Lingler's habitual offender status following his trial. Accordingly, the State is barred from retrying Lingler as an habitual offender.

### CONCLUSION

We hold that the post-conviction court properly denied Lingler's claims that (1) the attempted murder instruction was erroneous; (2) the evidence was insufficient at the post-conviction stage to prove his habitual offender status; and (3) he was placed in double jeopardy because his felony convictions for rape, criminal deviate conduct and criminal confinement were all elevated based on his use of a deadly weapon. The denial of post-conviction relief on those claims is affirmed. However, we further hold that Lingler was denied the effective assistance of appellate

---

**3.** Lingler's contention that his counsel was ineffective for failing to object to the court's attempted murder instruction is without merit. That instruction was not erroneous but adequately set

forth each element of the offense of attempted murder. *See* Issue One. We find that Lingler's counsel provided effective assistance on this issue.

counsel when, on direct appeal, his counsel failed to challenge the sufficiency of the State's evidence in the habitual offender phase of his trial. Lingler's counsel's ineffective representation deprived him of his due process right to have the State prove his habitual offender status beyond a reasonable doubt. Therefore, we vacate Lingler's adjudication as an habitual offender. Because in Lingler's direct appeal the reviewing court would have found that the evidence was insufficient to prove his habitual offender status, the State is barred from retrying Lingler as an habitual offender.

The denial of post-conviction relief is affirmed in part, reversed in part, and remanded for modification of the sentence.

ROBERTSON and BAKER, JJ., concur.